Filed 12/26/14  P. v. Weaver CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

| California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115. |
|---|

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E060930 |
| v. | (Super.Ct.No. FVA010016) |
| CURTIS DONNELL WEAVER, | OPINION |
| Defendant and Appellant. | |


APPEAL from the Superior Court of San Bernardino County.  Michael A. Smith, Judge.  (Retired Judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Loleena Ansari, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Curtis Donnell Weaver appeals after the trial court denied his petition to recall his sentence under Penal Code section 1170, subdivision (d).  We

1

affirm the order denying the petition to recall defendant's sentence. Defendant has also filed a petition for writ of habeas corpus, which will be treated separately.

FACTS AND PROCEDURAL HISTORY

In 1998, San Bernardino County Sheriff's officers executed a narcotics search warrant at an apartment in Fontana, California. They found defendant's girlfriend outside the apartment, trying to enter the front door as the officers attempted to execute the warrant. Defendant's girlfriend was detained. Just inside the front door, officers saw defendant trying to run to the kitchen. Defendant tossed a white container onto the floor as he ran, but he was caught and detained. Two other men, who had been sitting on the couch in the living room, were also detained while officers proceeded to conduct their search.

Defendant's girlfriend was in possession of a black plastic canister containing a baggie of suspected cocaine. The white container defendant had tossed away was recovered; it was a Tylenol bottle containing white chunks of a substance believed to be cocaine. Inside the microwave was a glass plate, on which were several small plastic baggies, all of which contained cocaine residue. A larger baggie contained marijuana residue. On a dresser in the bedroom, officers located a scale, commonly used to weigh and package drugs, and elsewhere in the apartment, they found a loaded handgun, a .38-caliber revolver with the serial number scratched off. Inside a wallet with defendant's identification, officers found $100 in bundles of ten $1 bills. Defendant also had $795 cash in his back pocket. Neither defendant nor his girlfriend could account for the cash,

2

as neither one was employed. Although defendant claimed the cash was "rent money," he could not state the amount of rent for the apartment.

The officers arrested both defendant and his girlfriend. Defendant's girlfriend gave a statement to the officers. She claimed the gun was hers; she had had it for about two years, for the purpose of protection. Defendant refused to make a statement without an attorney present.

Defendant and his girlfriend were initially charged together by a felony complaint, alleging one count of possession of cocaine base for sale, with allegations that each defendant was armed with a firearm in the commission of the offense (Pen. Code, § 12022, subd. (c)).

Eventually, defendant was charged separately in a second amended information with one count of possession of cocaine base for sale (Health & Saf. Code, § 11351.5), with an allegation that he was personally armed with a firearm, and one count of possession of a controlled substance with a firearm (Health & Saf. Code, § 11370.1, subd. (a)). The second amended information also alleged, as to both counts, that defendant had a 1976 strike prior for robbery, and, as to count 1, that defendant had a prior drug sales conviction (Health & Saf. Code, § 11370.2, subd. (a)) in 1989.

In November 1999, defendant pleaded guilty to both counts, and admitted the armed allegation, the prior strike, and the prior drug offense. Defendant would be sentenced to an aggregate term of 20 years, consisting of 10 years on count 1 (aggravated term of five years, doubled for the strike), two years on count 2 (one-third the middle

3

term of one year, doubled for the strike, consecutive), plus five years for the armed enhancement, plus two years for the prior drug offense enhancement. Defendant was released pursuant to a *Cruz* waiver (*People v. Cruz* (1988) 44 Cal.3d 1247), and ordered to appear for sentencing in January 2000. At that time, he would be sentenced to six years in state prison (mitigated term of three years on count 1, doubled). Defendant failed to appear at the sentencing hearing, however, and a bench warrant was issued. Defendant was eventually sentenced on April 3, 2002, to 20 years in state prison, as stated in the *Cruz* waiver.

In December 2013, defendant filed a petition to recall his sentence under Penal Code section 1170, subdivision (d). The trial court denied the petition. The register of actions describes the court's minutes as follows: "The court has read and considered Petition for Recall of Sentence pursuant to PC1170.126. [¶] The Court finds that Petitioner does not satisfy the criteria in PC1170.126(e) and is not eligible. [¶] Defendant's current commitment offenses include violation of H&S 11370.1 possession of drugs while armed with a loaded firearm. As defendant was armed with a firearm he is ineligible for resentencing under 1170.126 (PC1170.126(e)(2)). [¶] The petition for recall of sentence is denied."

Defendant filed a notice of appeal (and an amended notice of appeal) asserting as a ground that the finding that defendant was ineligible for resentencing under Penal Code section 1170.126 was erroneous.

Counsel appointed to represent defendant on appeal has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493]. Defendant was notified of the opportunity to file a personal supplemental brief. Defendant prepared such a brief, and also filed a petition for writ of habeas corpus in the appellate court, appending his personal supplemental brief, and other documents, as exhibits to his petition.

We now determine the merits of the appeal.

ANALYSIS

As noted, appointed counsel on appeal has filed a brief pursuant to *People v. Wende*, *supra*, 25 Cal.3d 436, and *Anders v. California*, *supra*, 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493]. Counsel has set forth a brief statement of the case, and identified one potential arguable issue: whether the trial court erred in denying defendant's petition for recall of sentence, which defendant had filed pursuant to Penal Code section 1170, subdivision (d), but which the trial court mistakenly treated as one under Penal Code section 1170.126.

Penal Code section 1170, subdivision (d)(1), provides: "When a defendant . . . has been sentenced to be imprisoned in the state prison and has been committed to the custody of the secretary, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced,

5

provided the new sentence, if any, is no greater than the initial sentence. The court resentencing under this subdivision shall apply the sentencing rules of the Judicial Council so as to eliminate disparity of sentences and to promote uniformity of sentencing. Credit shall be given for time served."[1]

Penal Code section 1170.126, on the other hand, allows inmates who have received indeterminate life terms for a third strike offense to petition for recall of sentence if their third strike offense was a nonviolent felony.

Although the trial court mistakenly referred to recall of sentence under Penal Code section 1170.126, defendant was not eligible for resentencing under either Penal Code section 1170, subdivision (d), or Penal Code section 1170.126. Defendant was sentenced as a second striker, not a third striker. He was ineligible to petition for recall of his sentence under Penal Code section 1170.126 for that reason alone, as well as on the ground cited by the trial court (armed in the course of the offense). (Pen. Code, § 1170.126, subds. (c), (e)(2).)

---

[1] Penal Code section 1170, subdivision (d)(2), allows an inmate sentenced to life without parole (with some exceptions not relevant here) to petition for resentencing if the inmate was under 18 years of age at the time of the offense, and the inmate provides evidence of remorse and rehabilitation, and avers at least one of four qualifying statements is true: i.e., the inmate was convicted under felony murder or aiding and abetting theories; the inmate did not have a juvenile record of assaultive offenses before the incarceration offense; the inmate committed the offense with at least one adult codefendant; or the inmate has demonstrated rehabilitation or potential for rehabilitation.

Penal Code section 1170, subdivision (d)(2) is inapplicable to defendant, who was well over the age of 18 when he committed the instant offenses.

Defendant's resentencing petition, which could have proceeded only under Penal Code section 1170, subdivision (d)(1), sought resentencing on the ground that the trial court should have inquired into the reason for defendant's absence at the sentencing hearing. If defendant had appeared, he would have received a six-year sentence. Because he failed to appear, he was sentenced to 20 years in prison.

Defendant's argument belies the stated basis for the resentencing petition, because he focuses instead on his mental state at the time of changing his plea, not at the time of the sentencing hearing. Defendant asserted that he suffered from mental illness (schizophrenia) and was under the influence of medications for that illness that rendered him drowsy, incoherent, distressed and confused, and that made him unable to understand or to think clearly when making decisions "on the day of plea bargain." Defendant's resentencing petition stated that he had taken his medications within 24 hours before the plea hearing. He acknowledged that "the Judge did question [him] as to purpose of medications and obtained assurances that [defendant] understood proceedings and was competent to ple[a]d guilty," but nevertheless claimed that the "Judge did not probe deeply enough with respect to what effect(s) such medications might have on [defendant's] clear headedness." Singularly absent from defendant's resentencing petition, however, is any statement that he did not know and understand the terms of the plea bargain when he made it. He also does not explain any connection between his alleged mental illness (for which he admits he received medical treatment) and his failure to appear at sentencing.

7

Another issue explored in defendant's resentencing petition is his assertion that he had no knowledge of the gun that he admitted possessing. During her police statement, defendant's girlfriend had said that the gun was hers and that defendant did not know it was in the apartment. Defendant appears to believe that his girlfriend's claim was an established fact, such that he should not have been alleged to have been in possession of the gun with respect to either count. The gun was loaded, it had its serial number scratched off, and it was found inside the apartment, where both defendant and his girlfriend resided, and to which both had full and complete access. Defendant was the one who had all the cash. Neither defendant nor his girlfriend had any ostensible means of income; inferentially, defendant got the money by dealing in drugs. The evidence that defendant was selling drugs was substantial. Drug dealers are frequently armed. It is also common for others to "claim" ownership of guns or drugs to shield another. There is no particular reason to credit the girlfriend's claim that the gun was hers (a claim that did not preclude defendant's possession of the gun), or her claim that defendant did not know the gun was in the apartment. Despite defendant's assertions now, he pleaded guilty to the offense of possession of drugs while armed, and he knowingly and voluntarily admitted the gun enhancement.

In short, defendant's petition to recall his sentence bespeaks buyer's remorse, and not any actual ground for resentencing. California Constitution, article VI, section 13 provides that, "No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence,

8

or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." There is no miscarriage of justice apparent in the trial court's denial of defendant's petition for resentencing, notwithstanding the trial court's erroneous reliance on Penal Code section 1170.126.

Defendant's personal supplemental brief, included as an exhibit to his petition for writ of habeas corpus, asserts claims that his trial counsel was unconstitutionally incompetent in a variety of ways.

Defendant claims that his trial attorney was incompetent for failing to challenge the validity and scope of the search warrant. He argues that his trial attorney should have sought exclusion of the gun, based on the girlfriend's statement to police that it belonged to her.

Defendant faults trial counsel for failing to call witnesses (his girlfriend, and the other occupants of the apartment that day) about defendant's lack of knowledge of the gun. Defendant also wanted his trial counsel to call a ballistics expert to say whether the gun was in fact actually loaded when found, and a forensics expert to determine whether defendant had handled any of the evidence, such as the gun, the scale, or the money (found in his wallet and in his back pocket).

Defendant asserts that his trial counsel was incompetent for failing to raise the issue of multiple punishment for a single act, pursuant to Penal Code section 654.

9

Both count 1 and count 2 were based on the same facts (defendant's possession of cocaine—the Tylenol bottle with the rock cocaine inside—and being armed with a firearm); the difference was that possession of the firearm was an element of count 2, while it was an enhancement allegation with respect to count 1

Defendant claims his counsel was incompetent because defendant could "prove" that his prison-term prior was invalid for enhancement purposes. Defendant was represented in this by seven different attorneys, and purportedly none of them represented him effectively. If not for counsels' combined incompetence in challenging the handgun allegations and the prison-term prior, defendant asserts, he would have been in a position to negotiate a much better plea bargain.

None of defendant's claims raised in the personal supplemental brief raises an arguable issue on appeal.

Defendant has not described any defect in the warrant that counsel should have examined, and has not produced the warrant. Even if defendant's girlfriend told police that the gun belonged to her, the court was not required to credit this claim, particularly because defendant was evidently the primary actor in the drug sales, given his possession of all the cash, as well as the rock cocaine. Defendant has not identified any manner in which his counsel was incompetent for failing to challenge the warrant, or in failing to obtain exclusion of the gun.

Defendant has identified no material evidence that could have been supplied by the witnesses that he faults his counsel for failing to call. Defense counsel was already

well aware of the girlfriend's claim of ownership of the gun. Defendant speculates that the other two persons present in the apartment might have been able to testify in corroboration of his girlfriend's claim to own the gun. Although defendant complains that there was no ballistics expert to testify whether the gun was in fact loaded when found, he makes no claim that the gun was not loaded. In addition, the procedures for booking evidence may have required the gun to be unloaded before storage; a belated examination of the gun would not necessarily show whether or not the gun was loaded when found. Whether or not forensic evidence would turn up defendant's fingerprints on the bottles, baggies, scales, gun, or cash was irrelevant. Defendant was in clear possession of the bottle he tossed away, the cash was in his wallet and his back pocket, and he resided in the apartment where the other items were located.

More importantly, the alleged failure to call witnesses is irrelevant under circumstances where defendant explicitly waived his right to present evidence—i.e., testimony from witnesses—at a trial. Counsel cannot be faulted for failure to conduct the trial that defendant had waived.

Defendant's claim of error under Penal Code section 654 is without merit. The intent and objective of the two crimes for which defendant was sentenced were different. The offense in count 1 concerned the possession of cocaine base for sale. The possession of a firearm was an enhancement, not a necessary element, of that offense. The primary objective of the offense is the sale of dangerous drugs. The offense in count 2 punishes possession of illegal drugs while armed with a loaded and operable firearm. Loading

11

involves separate activity from mere possession of a firearm. The court could properly find that the enhancement on count 1 and the possession of a loaded, operable firearm as an element of count 2, constituted two acts, not one. (See *People v. Vang* (2010) 184 Cal.App.4th 912, 917.)

Although defendant flatly declares that he can "prove" his prison term prior is invalid, he provides no support whatever for this claim. He knowingly and intelligently admitted the prior at his plea hearing. The admission suffices to admit the validity of the prior prison term conviction.

As to defendant's claim that his various counsel could and should have been able to negotiate a better plea bargain for him, we note that defendant's plea agreement called initially for a six-year prison term if defendant appeared as required at the sentencing hearing. Defendant's various attorneys were able to negotiate an extremely favorable bargain on his behalf, but he then threw that opportunity away; defendant lost the favorable sentencing recommendation when he violated his *Cruz* waiver and failed to appear on the sentencing date. Although defendant complains that the trial court failed to inquire into defendant's reasons for failing to appear, that matter was wholly within defendant's control, and he still fails to articulate any explanation for his absence. Defendant knew in advance that the 20-year sentence would be imposed if he violated the *Cruz* waiver; he then violated the *Cruz* waiver. Defendant cannot say he was surprised at the consequence.

Defendant's motion to recall his sentence refers vaguely to "medical, family and financial reasons" that "may have justif[ied]" his failure to appear, but he never articulates what those reasons actually were, either in his petition to recall the sentence or in his personal supplemental brief. He provides nothing to explain his failure to appear at sentencing.

Defendant has failed to demonstrate the existence of any arguable issue on appeal. Consequently, the order denying his motion for recall of his sentence is affirmed.

## DISPOSITION

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues on appeal. The order denying defendant's motion for recall of sentence is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:


RAMIREZ
P. J.


CODRINGTON
J.

13