Filed 2/18/25  P. v. Grunow CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CRAIG ANTHONY GRUNOW,<br><br>    Defendant and Appellant. | 2d Crim. No. B327660<br>(Super. Ct. No. 21F-05749)<br>(San Luis Obispo County) |

Craig Anthony Grunow appeals from the judgment entered after a jury convicted him of one count of sexual intercourse with a child (Kaitlyn) who was 10 years old or younger (Pen. Code, § 288.7, subd. (a)),[1] and 10 counts of lewd act upon a child under the age of 14 years: four counts as to Kaitlyn, two counts as to Kylee, and four counts as to Thea.  (§ 288, subd. (a).)  For each of these 10 counts, the jury found true an allegation that appellant was convicted in the present case of committing the same offense

---

[1] All statutory references are to the Penal Code.

against more than one victim.  (§ 667.61, subds. (c)(8), (e)(4), (j)(2).)

The trial court sentenced appellant to prison for an aggregate term of 250 years to life, calculated as follows: 25 years to life for sexual intercourse with Kaitlyn; 25 years to life, stayed pursuant to section 654, for a lewd act (the sexual intercourse) committed upon Kaitlyn; plus a consecutive sentence of 25 years to life for each of the remaining nine counts of lewd acts.  For all counts except the sexual intercourse count, 25-year-to-life terms were required pursuant to section 667.61, subdivisions (c)(8), (e)(4), and (j)(2).[2]

Appellant contends: (1) as to his conviction of sexual intercourse with Kaitlyn, the evidence is insufficient to show that she was 10 years old or younger (§ 288.7, subd. (a)); (2) the evidence is insufficient to support the convictions for lewd acts committed upon Kaitlyn and Thea (§ 288, subd. (a)); (3) section 654's prohibition against multiple punishment was violated by the imposition of consecutive sentences for each of the lewd acts committed upon Thea; (4) the matter must be remanded for resentencing because the trial court was not aware of its discretion to order that the sentences be served concurrently instead of consecutively; and (5) the trial court's reasons for imposing consecutive sentences were inadequate.  We affirm.

---

[2] Section 667.61, subdivision (j)(2) provides, "A person who is convicted of an offense specified in subdivision (c) [here, a violation of section 288, subdivision (a)] under one of the circumstances specified in subdivision (e) [here, committing the offense against more than one victim], upon a victim who is a child under 14 years of age, shall be punished by imprisonment in the state prison for 25 years to life."

*Factual Background*

Appellant was the boyfriend of Kaitlyn's and Kylee's mother (Mother). He was not the father of Kaitlyn or Kylee. When Kaitlyn was about four years old, Mother and her daughters moved into appellant's house. Appellant was a "[f]ather figure" to Kaitlyn. She called him "dad." Kylee also called him "dad" because "[h]e was the only father figure that [she] had."

After several years of living together, Mother and appellant ended their relationship. Mother moved to Arizona without her daughters "because she started doing drugs." Kaitlyn and Kylee moved into their aunt and uncle's house, but they frequently visited appellant at his house and stayed the night there. During the visits, appellant committed multiple acts of a sexual nature upon Kaitlyn and Kylee as well as Kaitlyn's friend, Thea. We describe below the sexual acts relevant to the issues in the present appeal.

*Sufficiency of the Evidence to Support Conviction of*
*Sexual Intercourse with Child 10 Years Old or Younger*

In count 1 appellant was charged with having engaged in sexual intercourse with Kaitlyn when she was 10 years old or younger. (§ 288.7, subd. (a)). Appellant contends the evidence is insufficient to satisfy the age requirement. He asserts, "Throughout her trial testimony, . . . Kaitlyn expressed uncertainty and spoke in contradictory terms about being either 10 *or* 11 years old at the time that crime occurred, which is insufficient to establish the requisite age element for conviction."

"'In reviewing a challenge to the sufficiency of the evidence, we do not determine the facts ourselves. Rather, we "examine the whole record in the light most favorable to the judgment to

determine whether it discloses substantial evidence – evidence that is reasonable, credible and of solid value – such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citations.] We presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] [¶] . . . "[I]f the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility. . . .'" (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.)

### Facts

Kaitlyn's testimony was internally inconsistent. On direct examination, she testified that appellant had committed the act "[p]robably when I was like nine or ten" after Mother had moved out of appellant's house. She moved out about three or four months after Kaitlyn's tenth birthday. Thus, Kaitlyn would have turned eleven about eight to nine months after Mother had left.

On cross-examination Kaitlyn testified that the offense "had to have [occurred in] summer, but I don't remember how old I was." Defense counsel asked, "Is it possible that this incident . . . happened more than a year after your mother left?" Kaitlyn answered, "Yes." If it had happened more than one year after Mother had left, Kaitlyn would have been 11 years old at the time of the offense. Defense counsel continued, "[Do] you have any way of knowing whether it happened in that first year after she had left or it happened in the second year after she had left?" Kaitlyn responded, "I do not remember." Counsel said, "[T]he question I'm asking is you can't be sure if this happened in

4

that first year or second year?" Kaitlyn replied: "I don't remember. I would probably say the first year, but I'm not, like, 100 percent sure." Counsel subsequently asked, "[Y]ou've limited this time frame that it could have happened when you were ten, maybe it happened when you were 11. Is that fair?" Kaitlyn answered, "Yes." On redirect examination, the prosecutor asked, "And you believe that you were ten at the time the defendant was on top of you with his private in your private?" Kaitlyn responded, "Correct."

Discussion

Viewing the evidence in the light most favorable to the judgment, we conclude substantial evidence supports the jury's finding that Kaitlyn was under the age of 11 years when appellant had sexual intercourse with her. A reasonable trier of fact could have believed Kaitlyn's testimony on direct and redirect examination that the offense had occurred when she was ten years old. "'[I]t is for the trier of fact to consider internal inconsistencies in testimony' [citation], and it is for us when reviewing for substantial evidence to resolve the inconsistencies in favor of the verdict. . . . As a general matter, juries may accept some parts of a witness's testimony and reject other parts [citations] . . . ." (*People v. Collins* (2021) 65 Cal.App.5th 333, 345.) "In our limited role on appeal, '[c]onflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment . . . . We resolve neither credibility issues nor evidentiary conflicts; we look for substantial evidence.'" (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 161-162; see *People v. Smith* (2011) 198 Cal.App.4th 415, 427 ["While Doe's testimony was internally inconsistent, it constituted

5

substantial evidence that defendant's molestation of Doe when she was eight years old involved substantial sexual conduct"].)

*People v. Haywood* (1955) 131 Cal.App.2d 259, is on point. Haywood was convicted of statutory rape of a 16-year-old girl. The girl "testified on direct examination that . . . she had committed . . . an act [of sexual intercourse] with Haywood. . . . [O]n cross and redirect examination the girl gave contradictory testimony on this point. Relying on this testimony, [Haywood] assert[ed] that 'It would therefore appear to be conclusive that an act of sexual intercourse was not accomplished . . . .'" (*Id.* at p. 261.) The appellate court held, "[T]he trial judge was entitled to accept as true the testimony of the complaining witness on direct examination rather than the conflicting testimony which she later gave." (*Ibid*; accord, *People v. Koontz* (1959) 171 Cal.App.2d 633, 634 [13-year-old victim's testimony sufficient to show sexual penetration; on direct examination she testified that penetration had occurred, but "[o]n cross-examination in answer to leading questions as to whether she was sure that there had been penetration . . . she answered 'No'"].)

*Sufficiency of the Evidence to Support Convictions on Three Counts of Lewd Act Committed upon Kaitlyn*

Each of counts 3, 4, and 5 charged appellant with committing a lewd act upon Kaitlyn in violation of section 288, subdivision (a). During closing argument, the prosecutor told the jury that these counts were based on three separate occasions when appellant directed Kaitlyn to take a shower. Appellant contends the evidence is insufficient to support his convictions on all three counts.

6

## Facts

Kaitlyn testified as follows: When she was "[p]robably 11" years old, on three occasions appellant "[d]irected [her] to take a shower" in a bathtub equipped with a showerhead. On each occasion the same scenario occurred. Appellant said, "'Hey, go get in the shower.'" She "needed to shower" because she had been playing in a nearby creek and "there's gross stuff in the water." When Kaitlyn was naked in the shower, appellant "came in, and he plugged the . . . drain. And then he got in . . . the shower with me, but he still had his underwear on. . . . [A]s the bath . . . filled up, he told me to sit down. And so I sat down, and he just . . . took a bath with me." "He just sat there" and did not "say anything." Appellant "[j]ust stare[d] at" Kaitlyn and did not touch her. They remained in the bathtub together "[p]robably like five to ten minutes." Kaitlyn could not "really remember" how she felt when this was happening, but she "probably" felt "scared."

The first time appellant took a bath with Kaitlyn, he "told [her] not to tell anyone." He did not repeat this command the second or third time.

## Discussion

The trial court instructed the jury as follows:

> To prove that the defendant is guilty of [violating section 288, subdivision (a)], the People must prove that:
>  1A. The defendant willfully touched any part of a child's body either on the bare skin or through the clothing; OR
> 1B. *The defendant willfully caused a child to touch his/her own body,* . . . either on the bare skin or through the clothing [italics added];

7

2.  The defendant committed the act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of himself or the child;
AND
3. The child was under the age of 14 years at the time of the act.

It is undisputed that appellant did not actually touch Kaitlyn during the bathing incidents.  The prosecutor argued that appellant had committed a "constructive touching" by directing Kaitlyn to take a shower, which required her to undress and touch her naked body.  (See *People v. Meacham* (1984) 152 Cal.App.3d 142, 154*,* abrogated on another ground in *People v. Brown* (1994) 8 Cal.4th 746, 756-757, 763 ["We hold the children's touching of their own genitalia at the instigation of appellant was a "constructive touching" by appellant himself"].)

Based on Kaitlyn's testimony, a reasonable trier of fact could find beyond a reasonable doubt that, by directing her to take a shower, appellant constructively touched Kaitelyn, i.e., he willfully caused her to remove her clothing and touch her bare skin.  (See *People v. Lopez* (2010) 185 Cal.App.4th 1220, 1230 (*Lopez*) ["The evidence established that the touching occurred when, at defendant's direction, the girls removed their clothing and dressed in clothing defendant told them to wear"]; *People v. Austin* (1980) 111 Cal.App.3d 110, 114 [although defendant did not actually touch child, "a touching occurred in the performance of [child's] act of removing [her] pants" because defendant coerced her to perform the act]; *id.* at p. 115 [defendant "was responsible for the touching and removal of the child's pants as surely as if he had done it himself"].)

Appellant did not commit a violation of section 288, subdivision (a) unless his constructive touching of Kaitlyn was

accompanied by a sexual intent: "The trier of fact must find a union of act and sexual intent (see § 20), and such intent must be inferred from all the circumstances beyond a reasonable doubt." (*People v. Martinez* (1995) 11 Cal.4th 434, 452 (*Martinez*); see *People v. Pitts* (1990) 223 Cal.App.3d 606, 889 ["the touching necessary for a section 288 violation may be done by the child victim on his or her own person provided it is done at the instigation of a person who had the required specific intent"].)

A reasonable trier of fact could find beyond a reasonable doubt that, when appellant directed Kaitlyn to take a shower, he acted with the requisite intent, i.e., the intent of arousing or gratifying his own sexual desires. Appellant's act "was sexually motivated by [his] lascivious desire to observe" Kaitlyn naked in the bath. (*Lopez*, *supra*, 185 Cal.App.4th at p. 1230; see *People v. Mickle* (1991) 54 Cal.3d 140, 176 ["Where committed for a sexually exploitative purpose," "the actual or constructive disrobing of a child by the accused . . . is presumptively harmful and prohibited by section 288(a)"].)

We reject appellant's assertion that "there is no evidence th[at] his thoughts and conduct consisted of anything more than taking a bath with this prepubescent child for a nonlewd reason, i.e., to keep her company while she played with the soap suds, such as might occur with family members as an expression of nonsexual affection for a child." Appellant did not display any affection for Kaitlyn. She did not intend to take a bath. She was taking a shower when appellant forced her to take a bath by plugging the drain and telling her to sit down. Appellant did not engage in play or conversation with Kaitlyn. She testified that for "five to ten minutes" he "just sat" mute in the bath, "star[ing] at" her naked body.

9

Appellant exhibited consciousness of guilt when he told Kaitlyn not to tell anyone about what had happened. (See *Martinez*, *supra*, 11 Cal.4th at p. 445 [In determining whether act was performed with the required lewd or lascivious intent, "relevant factors can include . . . any coercion . . . used to obtain the victim's cooperation or to avoid detection"].) Kaitlyn testified, "I . . . respected what he said [about not telling anyone] because I felt like that's always how I was taught is to respect what adults tell me to [do]."

Moreover, as evidence of appellant's sexual intent, the jury could consider his act of sexual intercourse with Kaitlyn as well as the other lewd acts committed upon Kylee and Thea. (*People v. Valenti* (2016) 243 Cal.App.4th 1140, 1160 ["In determining whether defendant acted with lewd intent, the jury was entitled to consider the other charged counts and his pattern of conduct"].) Accordingly, ample evidence supports the conviction of appellant on counts 3, 4, and 5.

*Sufficiency of the Evidence to Support*
*Convictions for Committing Lewd Acts upon Thea*

Counts 8-11 charged appellant with committing lewd acts upon Thea in violation of section 288, subdivision (a). Appellant committed the acts while he was massaging Thea. Counts 8 and 9 were based on separate acts of touching Thea's breast. Counts 10 and 11 were based on separate acts of touching her vagina. Appellant contends the evidence is insufficient to support his convictions because "there was no evidence that appellant behaved in a predatory fashion" or "that he was actually aroused during the massages, . . . or that he had no purpose other than sexual gratification."

10

## Facts

Thea and Kaitlyn were close friends. They would often stay overnight together at appellant's house. Thea referred to appellant as her "uncle," but they were not related.

Starting when Thea was nine years old, appellant gave her massages at his house. During the massages, he touched her breast, nipples, and "private parts" under her clothing. He touched "the top" of her vagina, but "not inside" it. Thea testified that the touching happened "[a]lmost every time I had a sleepover there, which I did frequently." The touching ended when she was 11 years old and was informed that appellant was a "predator."

## Discussion

Based on Thea's testimony as well as the testimony of Kaitlyn and Kaylee about other sexual acts committed by appellant, a reasonable trier of fact could find beyond a reasonable doubt that appellant touched Thea's naked skin with the intent of arousing or gratifying his own sexual desires. He could have given her a massage without touching her breast, nipples, and vagina under her clothing.

### *The Imposition of Consecutive Sentences on Counts 8-11 Did Not Violate Section 654*

Appellant argues that the imposition of consecutive sentences on counts 8-11 violated section 654's prohibition against multiple punishment. Appellant contends that on counts 8 and 10 he was punished for the "hand to breast touching" and hand to vagina touching during a single course of conduct – his "first massage" of Thea. Count 8 was based on the "first time" he touched Thea's breast. Count 10 was based on the "first time" he touched Thea's vagina.

11

Appellant further contends that on Counts 9 and 11 he was also punished for acts committed during a single course of conduct – the hand to breast touching and "hand to vagina touching during [Thea's] last massage." Count 9 was based on the "last time" appellant touched her breast. Count 11 was based on the "last time" he touched her vagina.

Appellant asserts, "Because each massage constituted a single episode or course of conduct as to which he had a single intent and objective, the separate convictions and sentences imposed for two 'lewd' acts during each massage were a violation of the proscription against double punishment under section 654."

Section 654, subdivision (a) provides, "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." "Even though section 654 refers to an 'act or omission,' . . . the relevant question is typically whether a defendant's "'course of conduct . . . comprised a divisible transaction which could be punished under more than one statute within the meaning of section 654.'" [Citation.] . . . 'Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.' [Citation.]" (*People v. Correa* (2012) 54 Cal.4th 331, 335-336.)

"[S]ection 654 does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification."

(*People v. Harrison* (1989) 48 Cal.3d 321, 325.)  "Such offenses are generally 'divisible' from one another under section 654, and separate punishment is usually allowed."  (*People v. Scott* (1994) 9 Cal.4th 331, 344, fn. 6 (*Scott*).)  If multiple punishment were barred for separate lewd acts committed on the same occasion, "the clever molester could violate his victim in numerous lewd ways, safe in the knowledge that he could not be convicted and punished for every act."  (*Id.* at p. 347.)

"[S]ection 654 does not preclude separate punishment for multiple sex offenses which, although closely connected in time and part of the same criminal venture, are separate and distinct, and which are not committed as a means of committing any other sex offense, do not facilitate commission of another sex offense, and are not incidental to the commission of another sex offense."  (*People v. Castro* (1994) 27 Cal.App.4th 578, 584-585 (*Castro*).)

Thus, "[w]here a defendant fondles a portion of the victim's body with the requisite intent, a violation of section 288 has occurred.  The offense ends when the defendant ceases to fondle that area.  Where a defendant fondles one area of the victim's body and then moves on to fondle a different area, one offense has ceased and another has begun.  There is no requirement that the two be separated by a hiatus, or period of reflection.  [¶] . . . It cannot reasonably be doubted that, when fondling of an underage victim moves from one area of the body to another, a separate outrage has occurred."  (*People v. Jimenez* (2002) 99 Cal.App.4th 450, 456.)

"Whether [section 654] 'applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination.  [Citations.]  Its findings will not be

13

reversed on appeal if there is any substantial evidence to support them. . . .'" (*People v. Vang* (2010) 184 Cal.App.4th 912, 915-916.)

Substantial evidence supports appellant's commission of two separately punishable lewd acts – touching Thea's vagina and touching her breast – during both the first and last massages. Neither act was "committed as a means of committing any other sex offense, . . . [nor] facilitate[d] commission of another sex offense, . . . [nor was] incidental to the commission of another sex offense." (*Castro*, *supra*, 27 Cal.App.4th at pp. 584-585; see *People v. Alvarez* (2009) 178 Cal.App.4th 999, 1007 [trial court could have reasonably concluded that kissing child was separately punishable under section 654 and not "merely designed to facilitate the subsequent acts of penetration and fondling"].) Accordingly, the trial court properly imposed consecutive sentences on each of counts 8-11.

*Claim that Trial Court Was Not Aware of Its Discretion*

*To Impose Concurrent Instead of Consecutive Sentences*

This claim concerns the nine consecutive sentences of 25 years to life for lewd act upon a child in violation of section 288, subdivision (a). Appellant argues: "[E]rror occurred because the trial court did not realize it had discretion to impose concurrent sentences. ' . . . [R]emand is necessary so that the trial court may have the opportunity to exercise its sentencing discretion at a new sentencing hearing. . . .'"

At the time of sentencing, the trial court initially stated: "[E]ach of the counts for which he's found guilty . . . will be entered as consecutive terms, pursuant to Penal Code Section 667.6(d) [which requires consecutive sentencing]. I'll go into more detail as I pronounce the judgment for the defendant's conviction on . . . these counts."

14

The trial court's pronouncement of judgment shows that, despite its prior referral to section 667.6, subdivision (d), it knew it had discretion to impose concurrent sentences on seven of the nine counts: counts 3-5, 7, and 9-11. For each of these seven counts, the court said consecutive sentences were justified pursuant to subdivision (a)(1) or (a)(3) of rule 4.425 of the California Rules of Court.[3] Rule 4.425 applies only when the trial court has discretion to impose concurrent or consecutive sentences. Rule 4.425(a)(1) provides that factors affecting the decision to impose consecutive rather than concurrent sentences include whether "[t]he crimes and their objectives were predominantly independent of each other." Rule 4.425(a)(3) provides that such factors also include whether "[t]he crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior."

For the consecutive sentences imposed on counts 6 and 8, the trial court did not invoke rule 4.425. Instead, it said the consecutive sentences were pursuant to rule 4.426(a)(1) and section 667.6, subdivision (d). Rule 4.426(a)(1) provides: "When a defendant has been convicted of multiple *violent* sex offenses as defined in section 667.6, the sentencing judge must determine whether the crimes involved separate victims or the same victim on separate occasions. [¶] (1) . . . If the crimes were committed against different victims, a full, separate, and consecutive term *must* be imposed for a *violent* sex crime as to each victim, under section 667.6(d)." (Italics added.)

---

[3] All references to rules are to the California Rules of Court.

Section 667.6, subdivision (d)(1) provides, "A full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions." Section 667.6, subdivision (e)(5) specifies the crime of "[l]ewd or lascivious act, in violation of subdivision (b) of Section 288." Section 288, subdivision (b)(1) states that it applies to lewd or lascivious acts "described in subdivision (a)" that are committed "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury." Subdivision (e) does not mention the charged offense in counts 6 and 8 – a nonviolent violation of section 288, subdivision (a).

Because counts 6 and 8 do not charge violent sex offenses, the trial court erroneously relied on rule 4.426(a)(1) and section 667.6, subdivision (d) in imposing consecutive sentences on these counts. The People concede that "section 667.6, subdivision (d) . . . was not applicable in this case."

The People argue that appellant forfeited the claim of error "by failing to object to the imposition of consecutive sentences at the sentencing hearing." "Although the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing." (*Scott*, *supra*, 9 Cal.4th at p. 353.) "'[C]laims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' are subject to forfeiture, including 'cases in which the stated reasons allegedly do not apply to the particular case . . . .'" (*People v. Boyce* (2014) 59 Cal.4th 672, 730-731.) Thus, "complaints about the manner in which the trial court exercises its sentencing discretion and

16

articulates its supporting reasons cannot be raised for the first time on appeal." (*Scott, supra*, at p. 356.)

Appellant is not merely complaining about "the manner in which the trial court exercise[d] its sentencing discretion and articulate[d] its supporting reasons." (*Scott, supra*, 9 Cal.4th at p. 356.) The record shows that the trial court erroneously believed that, as to counts 6 and 8, it could not exercise any sentencing discretion because it was required to impose 25-year-to-life consecutive terms. The trial court followed the probation report's recommendations without modification. The probation report stated that, as to counts 6 and 8, "the crimes were committed against different victims, therefore, a full, separate, and consecutive term *must* be imposed for a violent sex crime as to each victim, under Penal Code section 667.6(d)." (Italics added.) Thus, appellant may raise the claim of error for the first time on appeal. (See *In re Sean W.* (2005) 127 Cal.App.4th 1177, 1181 [juvenile offender allowed to argue for the first time on appeal that "the court completely failed to exercise its discretion . . . in setting appellant's maximum term of confinement"].)

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, [our Supreme Court has] held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been

17

aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.)

Here, the record clearly indicates that the trial court would have imposed consecutive sentences on counts 6 and 8 even if it had been aware of its discretion to impose concurrent sentences on these counts. Relying on either rule 4.425(a)(1) or rule 4.425(a)(3), the court imposed consecutive 25-year-to-life sentences on all seven of the other section 288, subdivision (a) convictions. "In other words, the court was . . . uniformly imposing the maximum possible punishment . . . ." (*People v. Dearborne* (2019) 34 Cal.App.5th 250, 266.) We can think of no reason why the court would not have exercised leniency as to these seven counts but would have exercised leniency as to counts 6 and 8. The imposition of concurrent sentences on counts 6 and 8 would have been contrary to its intent to impose the maximum possible punishment.

Furthermore, the court found aggravating factors in that "each and every one of these victims was particularly vulnerable" (rule 4.421(a)(3)) and that appellant "took advantage of a position of trust or confidence to commit these offenses." (Rule 4.421(a)(11).) The court continued, "The only factor in mitigation that the Court has to find -- and will do so because I have no choice -- is pursuant to Rule 4.423(b)(1), the defendant has no prior record."

Finally, the probation report was particularly damning of appellant. It concluded: "The defendant's repeated acts of sexual assault on multiple victims over the course of one year, during which time he could have reflected upon the wrongfulness of his actions and ceased his behavior, demonstrates a significant level of callousness and cruelty. The defendant took advantage of his

position as a trusted family and father figure to create opportunities and gain access to the victims.  He has subjected them to a lifetime of psychological pain and suffering.  The three young victims were robbed of their innocence and their daily lives have been impacted in irrevocable measures."

*Appellant Forfeited Claim that Trial Court Gave*
*Inadequate Reasons for Imposing Consecutive Sentences*

Appellant claims, "The trial court's statement of reasons for imposing full, separate, and consecutive sentences was inadequate."  (Bold and capitalization omitted.)  The claim is forfeited because appellant did not object to the statement of reasons in the trial court.  (*Scott*, *supra*, 9 Cal.4th at p. 356.)

*Disposition*

The judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

CODY, J.

19

Timothy S. Covello, Judge

Superior Court County of San Luis Obispo

_____

Maxine Weksler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Ana R. Duarte, Deputy Attorney General, for Plaintiff and Respondent.